IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| SUSAN PEACHES BUTLER, | ) Civil Action No. 4:12-3389-GRA-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| CAROLYN W. COLVIN,[1] ACTING | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.

**PROCEDURAL HISTORY**

The Plaintiff asserted she became disabled on August 1, 2003, and initially filed an application for SSI on June 9, 2006. Plaintiff requested a hearing before an administrative law judge (ALJ) after her claim was denied initially and on reconsideration. A hearing was held on January 7, 2009. Before the hearing, Plaintiff amended her onset date to June 9, 2006. A continuation of the

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

hearing was issued by the ALJ so that Plaintiff could be psychologically evaluated. The hearing was reconvened on May 7, 2009, before a different ALJ. On June 1, 2009, the ALJ issued an unfavorable decision. The Appeals Council remanded the case on December 15, 2010, ordering the ALJ to make sufficient and specific reference to the medical evidence of record in support of his assessed limitations of her Residual Functional Capacity (RFC) as established by the ALJ. The ALJ was directed to discuss Plaintiff's severe obesity as it regarded her ability to work. Before the hearing on July 7, 2011, Plaintiff's lawyer informed the ALJ that she was amending her onset date to February 19, 2009, to coincide with her fifty-fifth birthday. On October 20, 2011, the ALJ denied the claim finding Plaintiff not disabled. After the Appeals Council denied Plaintiff's subsequent request for review of the ALJ's decision of October 20, 2011, the ALJ's decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g). See 20 C.F.R. § 404.981. Plaintiff filed this action on November 29, 2012.

## **FACTUAL BACKGROUND**

The Plaintiff was born on February 19, 1954, and was fifty-five years of age on her alleged amended onset date. Plaintiff has a high school education and an associate's degree in physical therapy and bachelor's degree in young childhood education to teach deaf children. Plaintiff has past relevant work experience as a weaver. (Tr. 32). Plaintiff alleged disability due to obesity, degenerative joint disease, knee injury, ankle injury, joint disorder of the shoulders, and carpal tunnel syndrome in her hands. (Tr. 17).

## DISABILITY ANALYSIS

The Plaintiff's arguments consist of the following, quoted verbatim:

(1)     Did the Defendant commit reversible error by violating the SSA's directives to not use the TOMM (Test of Memory and Malingering) and using the test given by Joseph K. Hammond, Ph.D.?

(2)     Did the Defendant commit reversible error by failing to make adequate credibility findings concerning the testimony of Ms. Butler?

(Plaintiff's brief).

In his decision of October 20, 2011, the ALJ made the following findings of fact and conclusions of law:

1.     The claimant has not engaged in substantial gainful activity since June 9, 2006, the application date (20 CFR 416.971 *et seq.*).

2.     The claimant has the following severe impairments: obesity, degenerative joint disease and knee injury, ankle injury, and joint disorder of the shoulders (20 CFR 416.920(c)).

3.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.     Claimant is capable of medium work. To wit, she can lift or carry up to fifty pounds on an occasional basis and up to twenty-five pounds on a frequent basis. She can stand, walk, and sit for up to six hours during any given eight hour workperiod. She has a limitation in her ability to push or pull and can do these activities on a frequent basis. She is limited to crouching, crawling, kneeling, and balancing. She is restricted to occasional overhead reaching and frequent handling using the right upper extremity.

5.     The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.     The claimant was born on February 19, 1954, and was 52 years old, which is defined as an individual of advanced age, on the date the application was

3

filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 9, 2006, the date the application was filed (20 CFR 416.920(g)).

(Tr. 17-33).

Under the Social Security Act (the Act), 42 U.S.C. § 405 (g), this court's scope of review of the Commissioner's final decision is limited to determining: (1) whether the decision of the Commissioner is supported by substantial evidence, and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir.

1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a.. An ALJ must consider: (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work, and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5), pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing his inability to work within the meaning

5

of the Act. 42 U.S.C. § 423 (d)(5). He must make a prima facie showing of disability by showing

he was unable to return to his past relevant work. <u>Grant v. Schweiker</u>, 699 F. 2d 189, 191 (4th Cir.

1983).

Once an individual has established an inability to return to his past relevant work, the burden

is on the Commissioner to come forward with evidence that the plaintiff can perform alternative

work and that such work exists in the national economy. The Commissioner may carry the burden

of demonstrating the existence of jobs available in the national economy that the plaintiff can

perform despite the existence of impairments which prevent the return to past relevant work by

obtaining testimony from a vocational expert. <u>Id</u>. at 191.

## **PLAINTIFF'S SPECIFIC ARGUMENTS**

**<u>Credibility and TOMM</u>**

Plaintiff argues that the ALJ failed to properly assess her credibility and erred in relying on

the results of the TOMM test given by Dr. Jospeh K. Hammond in making the credibility

determination all in violation of the SSA's directives.[2]

---

[2] The January 26, 2012, Administrators' Letter No. 866 from the SSA's Office of
Disability Determinations to the State Disability Determination Services ("DDS")
Administrators states in pertinent part:
SSA does not support the purchase of tests for malingering or credibility. While the results from
these tests can provide evidence suggestive of poor effort, or of intentional symptom
manipulation, results from such instruments are not programmatically useful in resolving the
issue of the credibility of an individual's statements.

* * *
The DDS must:

• Remove malingering and credibility tests from fee schedules and from the list of test options in
their legacy systems. e.g., ... TOMM . . .

• If the DDS receives a request to purchase a malingering or credibility test ...:

    • the DDS should not purchase the test....

Defendant responds that the ALJ did not err in his credibility determination. Further, Defendant argues that the ALJ did not err in his reliance on Dr. Hammond's report and even if the court finds the ALJ erred in citing to the results of the TOMM test (which it does not concede), there is no harmful error as Plaintiff has not shown that any alleged error affected the ALJ's decision.

Under Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps.  First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged.  Not until such underlying impairment is deemed established does the factfinder proceed to the second step:  consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints.  See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01, 34484-85.  The ALJ found at Craig's step one that Plaintiff's impairments could be capable of producing the symptoms that he alleged and, accordingly, proceeded to step two. It is here that Plaintiff has an issue.

The ALJ set out a summary of Plaintiff's medical records and testimony at the hearing and concluded that Plaintiff's allegations that she is unable to perform all work activity are not credible. Plaintiff was seen for a consultative examination by Dr. Hammond who conducted an "Adult Mental Status Examination" on February 4, 2009. In his report, Dr. Hammond noted that Plaintiff completed the Wechsler Adult Intelligence Scale- III, with scores of a Verbal IQ of 61, a Performance IQ of 58, and a full scale IQ of 56. However, Dr. Hammond noted that the scores were not considered valid.  Plaintiff was also administered "the TOMM" with performance that "was near the level of impairment that could not be obtained by chance." (Tr. 463). Dr. Hammond's diagnostic impression was as follows:

_____

(Exhibit 15-2, p. 2

Diagnosis was not possible on the basis of the current presentation. The claimant endorsed a wide range of serious psychological symptoms including those of major depression, somatoform disorder and anxiety disorder all with psychotic features. She made errors on simple cognitive tasks and the evaluation could not rule out or confirm any type of cognitive disorder. However, the validity of any impression was undermined by her style of presentation and level of effort.

(Tr. 463).

The ALJ found as follows:

The record in this case establishes that the claimant's contentions regarding symptoms and limitations are not wholly credible. The credibility of claimant's allegations and limitations is diminished by inconsistencies in her testimony and a lack of support for said testimony in the medical record.

Claimant's alleged mental limitations are discounted by her performance in the most recent mental consultive examination in the record at Exhibit 17F. Therein, claimant's performance on several mental status batteries was "undermined by her style of presentation and level of effort." Claimant's diminished performances on cognitive drills and an administered IQ test were found to be wildly inconsistent with claimant's exhibited ability to find her own way to the examiner's office and arriving an hour early for examination, unaccompanied by any assistant (*ld*., at Page 4).

I again note that claimant was administered a TOMM malingering battery in this examination. The schematic of this battery is such that a score under 45 indicates malingering, and that lower scores correspond to a higher likelihood of malingering. In two separate trials of the TOMM battery, claimant scored 25 and 17, respectively (*ld*., at Page 6). At one point during the second trial, claimant had nine consecutive errors and was near the level of impairment that could not be obtained by chance. This performance, coupled with the examiner's

8

discussion of her style or presentation and lack of effort on testing, diminishes the credibility  of her allegations and subjective complaints.

Counselor's notes from Greenville  Mental Health indicated that counselors could"... never get a straight answer as to how much education [claimant] really had..."  Claimant also alleged an inability to lift her arms or use her shoulders here, even though other records from Greenville Mental Health describe her flailing her arms wildly about in describing frustrations of her personal life (Exhibit 22F).

Claimant was also misleading regarding her involvement in repainting the interior of her apartment.  In other records, she alleged that she painted the entire apartment on her own (Exhibit 22F).  When confronted with this activity at hearing, claimant alleged that she received substantial assistance from others in painting.

Claimant appeared in the hearing room with a cane and using wrist splints, although there is no evidence in the record of prescription for these devices. There is also documentation in the record that claimant appeared in the emergency room, at counseling sessions, and consultive examinations without any cane or wrist braces.  As noted in numerous instances above, claimant exhibited an unremarkable gait (Exhibit 20F, at Page 28).  The record also indicates that she walked herself to the hospital from her home during one presentation in the emergency room (Id., at page 3).  Other records, particularly those from St. Francis, indicate that she exhibited full range of motion without an ambulatory device, and that x-rays of her musculoskeletal system were unremarkable (Exhibit 19F).  2008 x-rays indicate no acute abnormality (Exhibit 13F).

Other 2009 notes from this same source indicate mild to moderate degenerative changes of the knee joints and back (Exhibit 20F).  December, 2009 notes included findings of regular breathing function with mild pulmonary venous congestion.  In addition to a full range of motion assessment, examination of her knee found no warmth, laxity, or erythma limping.  X-rays showed only a small

9

joint effusion.

Compared with the medical evidence of record which repeatedly illustrates claimant to have normal, unassisted gait and range of motion, her act of appearing before me with a cane appears to be a fraudulent act of symptom magnification.

Claimant's allegations of extensive limitations borne of carpal tunnel syndrome are also inconsistent with the complete lack of medical documentation of carpal tunnel syndrome in the most recent medical treatment records. In addition to her testimony before me, she indicated a history of carpal tunnel syndrome at various points in the record (Exhibits 6F, 19F).

While records from St. Francis indicate some acute tenderness in the left hand (Exhibit 20F, at Page 6), there is absolutely no record of diagnosis or treatment of carpal tunnel during the amended period of disability. These records indicate no tingling, paresthesia, numbness, or weakness in either hand (Id.)

This lack of diagnosis or treatment of carpal tunnel is inconsistent with claimant's assertion that carpal tunnel symptoms persisted as her "second most" serious medical problem and cause of her alleged chronic pain. I find that claimant's assertion here, in such contrast to the evidence of record, further detracts from the credibility of her allegations and subjective complaints.

(Tr. 26-27).

The ALJ may choose to reject a claimant's testimony regarding her pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir.1989) (quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir.1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and

to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

The undersigned concludes the ALJ conducted the proper credibility analysis under the Social Security Rules and cited substantial evidence to support his finding that Plaintiff's subjective complaints were not entirely credible. The ALJ cited to evidence of record which was inconsistent with Plaintiff's testimony. The ALJ noted that Dr. Hammond administered the TOMM test to the Plaintiff. However, the ALJ stated that he gave no persuasive weight to the Medical Assessment Mental Ability-Work Related Activities questionnaire completed by Dr. Hammond. Instead, the ALJ relied on the treatment records from St. Francis Hospital, the Greenville Mental Health, and the consultative reviewers reports.  The ALJ noted the following with regard to the Greenville Mental Health:

> Counseling notes from claimant's attendance at Greenville Mental Health indicate that her mental functional capacity was much greater than that alleged by claimant at [the] hearing and in other parts of the record. She presented to counseling sessions at Greenville Mental Health well dressed and well groomed, and her interactions during counseling sessions indicated that she was able to care for herself in a manner consistent with my specific finding here. She was always able to actively engage in group counseling sessions and related to the experiences of her fellow mental health consumers.

> She was always supportive of these other clients. Notes from this source also indicated that claimant maintained a romantic relationship. Still other Greenville Mental Health notes indicated that claimant reported with a bright affect and that she remained focused on topic during group therapy sessions. Overall, these records constructed a longitudinal history of treatment and assessment of mental health issues, and I gave them considerable weight as I made my findings herein.

(Tr. 30).

11

The ALJ further noted as follows:

> . . . Activities of daily living that have been set forth throughout this
> opinion is consistent with the opinions. By way of example, the
> claimant was reported to be painting her home, she walked in order
> to transport herself to various places, she was able to tote water,
> attend church, shop, and do laundry. Physical examinations revealed
> normal range of motion, normal reflexes and x-ray of the right knee
> disclosing small joint effusion. She was found to have normal breath
> sounds, no respiratory distress, x-ray of the left knee revealed
> minimal degenerative changes with normal range of motion, no
> edema or tenderness.

(Tr. 30-31).

As set out above, the ALJ discussed the results of the TOMM test administered by Dr. Hammond but stated that "[t]his performance, coupled with the examiner's discussion of her style or presentation and lack of effort on testing, diminishes the credibility of her allegations and subjective complaints." (Tr. 26). Additionally, Dr. Hammond concluded in his evaluation report that Plaintiff a diagnosis was not possible. The ALJ noted that when Plaintiff was evaluated in August 2010, her affect and mood were normal referencing. He also relied on the "most recent mental health records in this case, from the South Carolina Department of Mental Health Greenville, [which] indicate[d] that claimant was more assertive, in overall good spirits, and that she 'had her best Christmas in 15 years.'" Additionally, her GAF was repeatedly assessed at 75 or 80 and ". . . she went the better part of 2010 (from February to December 2010) without treatment or counseling. Memory was assessed as 'quite sharp' and attention and concentration were fully intact. She denied panic attacks. Overall, her behavior at these counseling sessions appears to be inconsistent with the kind of complaints and allegations forwarded by claimant, as they related to her mental impairments." (Tr. 23-24). With regard to her mental impairments, the ALJ concluded

she was not credible based on her daily activities, how she presented herself at counseling sessions, her interaction during the sessions, and the recent Psychiatric Review Technique by Robbie Ronin that Plaintiff had only mild limitations. The ALJ did not completely rely on Dr. Hammond's report including the results of the TOMM test. The ALJ noted inconsistencies within the record and Plaintiff's statements and testimony. He relied on other evidence of record. Additionally, to the extent that the ALJ may have improperly relied on the TOMM test administered by Dr. Hammond in determining Plaintiff's credibility, the error is harmless because the ALJ gave several other reasons for his credibility finding that were supported by substantial evidence. *Mickles v. Shalala*, 29 F.3d 918, 921 (4th cir. 1994) (finding the ALJ's error harmless where the ALJ would have reached the same result notwithstanding). The ALJ conducted a proper credibility analysis with regard to Plaintiff's alleged mental impairment.

As to her complaints of pain, the ALJ found her complaints to be inconsistent and not credible. For example, the ALJ noted that while Plaintiff told her counselors that she had overwhelming pain, she was able to sit through an "entire counseling session in a relaxed, chatty mood, all the while waving her arms in dramatic fashion." (Tr. 24). The ALJ cited to the December 2009 notes from St. Francis Hospital that Plaintiff had normal range of motion throughout her musculoskeletal system. (Tr. 22 and 27). The ALJ discussed the notation in these hospital notes where Plaintiff indicated that she owned and operated a lawn mowing service which is inconsistent with her allegations of diminished mental function and physical limitation. As to her allegations of carpal tunnel syndrome, the ALJ did not find her credible based on the objective medical evidence. The ALJ noted that Plaintiff appeared at the hearing using wrist splints and a cane although there was no medical evidence in the record of a prescription for the devices. Further, the ALJ noted that

Plaintiff appeared in the emergency room, at counseling sessions, and consultative examinations without either device. The ALJ also discussed the opinion of Dr. Tollison finding that Plaintiff could grasp, turn, twist objects 20% of the time, finger 70% of the time, and reach 10% of the time. Dr. Tollison's opinion was given little weight because he was not a treating source, he was engaged for the purposes of rendering an opinion to establish disability, and he based his opinion on subjective complaints without the benefit of any diagnostic tests. As to the use of the cane, the ALJ found it was not prescribed by a doctor, and it was noted that she walked to medical appointments/counseling sessions without the use of a cane. The ALJ relied on Plaintiff's activities of daily living, the reports of Dr. Chandler and Dr. Slooten, and the notes from St. Francis Hospital in finding her allegations of pain not credible. (Tr. 31).

Based upon the record and decision as a whole, Plaintiff's allegation of error is without merit. Substantial evidence supports the ALJ's determination that the Plaintiff's testimony was not fully credible. The fact that the Plaintiff can point to some other evidence in the record that supports her alleged inability to work does not diminish the ALJ's analysis. When conflicting evidence is presented, it is up to the ALJ to resolve those inconsistencies. Hays v. Sullivan, 907 F.2d, 1453, 1456 (4th Cir.1990).  It is not the responsibility of the Court to determine the weight of the evidence.  Id.  Here, the ALJ's decision is supported by substantial evidence.

## CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence.  Richardson, 402 U.S. at 390.  Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the

Commissioner's findings must be affirmed if substantial evidence supported the decision. <u>Blalock,</u> 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. <u>Shively  v. Heckler</u>, 739 F.2d at 989.  As previously discussed, despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this Court finds that the ALJ's findings are supported by substantial evidence. Therefore, it is RECOMMENDED that the Commissioner's decision be AFFIRMED.

<u>s/Thomas E. Rogers, III</u>

Thomas E. Rogers, III

United States Magistrate Judge

November <u>26</u>, 2013

Florence, South Carolina

15